703 A.2d 347

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JIMMY LEE RILEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 18, 1997—Decided December 11, 1997.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*John Vincent Saykanic* argued the cause for appellant (*Ivelisse Torres*, Public Defender, attorney; *Mr. Saykanic*, Designated Counsel and on the brief).

*Salvatore E. Rozzi* argued the cause for respondent (*Carmen Messano*, Hudson County Prosecutor, attorney; *Dawn J. Foti*, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Following a bench trial, defendant Jimmy Lee Riley was convicted of related charges of first-degree armed robbery, *N.J.S.A.* 2C:15–1, and fourth-degree possession of a knife under circumstances not manifestly appropriate for lawful use, *N.J.S.A.* 2C:39–5d. He was acquitted of the related charge of third-degree possession of a knife with intent to use it unlawfully. *N.J.S.A.* 2C:39–4d. Defendant was sentenced to a sixteen-year term on the first-degree conviction and to a concurrent term of ten months on the fourth-degree conviction. Appropriate VCCB and SSCA penalties were also imposed.

In appealing from the judgment of conviction, defendant raises the following issues:

I. THE TRIAL JUDGE ERRED IN REFUSING TO DISMISS/AMEND COUNT 1 AS TO THE ARMED ROBBERY SINCE DEFENDANT WAS NEVER ARMED WITH A DEADLY WEAPON.

II. DEFENDANT'S CONVICTION FOR FIRST DEGREE ARMED ROBBERY MUST BE REVERSED AS THE POCKETKNIFE DOES NOT CONSTITUTE A "DEADLY WEAPON."

III. THE TRIAL JUDGE ERRED IN REFUSING TO ENTER A JUDGMENT OF ACQUITTAL IN FAVOR OF DEFENDANT AS TO ALL COUNTS; THE STATE FAILED TO ESTABLISH DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND NEW JERSEY STATE CONSTITUTION. (Partially raised below.)

IV. THE DEFENDANT'S CONVICTIONS WERE AGAINST THE WEIGHT
OF THE EVIDENCE AND THE STATE FAILED TO PROVE DEFEN-
DANT'S GUILT BEYOND A REASONABLE DOUBT CONTRARY TO
THE FOURTEENTH AMENDMENT OF THE UNITED STATES CON-
STITUTION AND NEW JERSEY STATE CONSTITUTION.

V. DEFENDANT RILEY WAS DENIED HIS STATE AND CONSTITUTION-
AL RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AS
GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED
STATES CONSTITUTION AND BY ARTICLE I, PARAGRAPH 10 OF
THE NEW JERSEY STATE CONSTITUTION. (Not raised below.)

VI. THE DEFENDANT WAS DEPRIVED OF HIS SIXTH AMENDMENT
CONFRONTATION RIGHT AND FOURTEENTH AMENDMENT DUE
PROCESS RIGHT TO A FAIR TRIAL DUE TO THE ADMISSION OF
HEARSAY. (Partially raised below.)

VII. THE CONVICTION OF COUNT 1 (ARMED ROBBERY) IS INCONSIS-
TENT WITH THE ACQUITTAL OF COUNT 2 (POSSESSION OF A
WEAPON FOR AN UNLAWFUL PURPOSE) IN VIOLATION OF DE-
FENDANT'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS.
(Not raised below.)

Having carefully reviewed these issues in the light of the record, the applicable law, and the arguments of counsel, we are persuaded that there was insufficient evidence to convict defendant of either first-degree robbery or fourth-degree possession. In sum, we are persuaded that the State's proofs support a finding of guilt of second-degree robbery but are inadequate to support either the armed element of first-degree robbery or the fourth-degree weapon possession conviction. Accordingly, we remand to the trial court for modification of the judgment of conviction to reflect that only a second-degree robbery was committed and for resentencing on that crime.

According to the State's case, on February 26, 1995, the victim, James Sims, an elderly man, had walked from his home in Jersey City to a liquor store about three blocks away where he bought a pint of vodka. Defendant, who was known to the victim, was in the store and observed the transaction. Defendant left the store shortly after the victim. Just as the victim was reaching his own front door, defendant knocked him to the ground, causing the victim to scrape his knuckles, to the point of bleeding, on the sidewalk. Defendant then took the victim's money, about $45,

from his pocket. The victim testified that a van passing on the street stopped, and that one of the occupants ran out and pulled defendant off him. At that point, a neighbor, Thomas Phillips, a State corrections officer was leaving his house nearby and was told by neighbors that an old man was being robbed. He himself saw defendant standing over the victim, who was still on the ground. Phillips, after having the police called, intervened, and asked what had happened. The victim asserted that defendant had robbed him. Defendant asserted that he was walking behind the victim, believed the victim to be intoxicated, and saw him fall to the sidewalk. He, defendant, was merely trying to assist him. In any event, after denying to Phillips that he had any money on his person, defendant finally disgorged some $45, stained with blood, from his pocket together with a three-bladed pocket folding knife, the largest blade being about four inches long. By this time the Jersey City police had arrived and arrested defendant. Based on the foregoing facts, defendant was indicted for first-degree robbery and the two weapons offenses.

The sole witnesses for the State were the victim and Phillips, the victim insisting that defendant had knocked him down and robbed him and Phillips describing his recovery from defendant at the scene of the bloodstained money and the pocket knife. Defendant testified on his own behalf despite his criminal record, again insisting that he had merely been trying to assist the victim who had fallen to the ground in an intoxicated condition.

The judge credited the State's version of the event, and our review of the record satisfies us that the finding that the victim had been robbed by defendant was consistent with and amply supported by the evidence, defendant's denials notwithstanding. We therefore defer to that finding. *See, e.g., State v. Johnson,* 42 *N.J.* 146, 161–162, 199 *A.*2d 809 (1964).

The problem we have relates to the asserted armed feature of the robbery that elevated this offense from a second-degree to a first-degree crime. *N.J.S.A.* 2C:15–1b defines robbery as a first-degree crime if, among other circumstances not here relevant, the

actor, in the course of committing the theft, "is armed with, or uses or threatens the immediate use of a deadly weapon." There was no evidence that defendant used or intended to use his pocket knife during the course of the robbery. Nor did the victim himself have knowledge of defendant's possession of the knife. Indeed the judge specifically found these facts in acquitting defendant of the third-degree possession charge. Since defendant could not, therefore, have been convicted of the first-degree offense on the basis of using or threatening immediate use of a deadly weapon, the question then is whether he could have been found to have been armed with a deadly weapon simply by reason of the pocket knife having been on his person during the course of the robbery. We are persuaded that that question must be answered in the negative because, in the circumstances here, the pocket knife was not capable of being found to have been a deadly weapon within the intendment of the statute.

"Deadly weapon" is defined by 2C:11–1c as

> any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.

The statutory definition thus embraces two discrete categories. The first is firearms, which are *per se* deadly weapons and whose character as deadly weapons is not, therefore, dependent on how they are used or intended to be used or on what the victim believes their deadly capacity is. The second category is the all-inclusive category of every other material object that can be used or intended to be used in such a way as to cause death or serious bodily injury or is so fashioned to lead the victim to believe it has that capacity. We think it plain that under the statutory scheme, this second category consists of two discrete classes of objects. The first includes *per se* weapons that are not firearms, namely objects that, by their nature, have no apparent use or purpose other than the infliction of death or serious bodily harm and whose likelihood of possession for a lawful purpose is so remote that their

possession by persons who are not members of the military or a law enforcement unit is interdicted by law. *See N.J.S.A.* 2C:39–3g, –6. That is to say, this is a category of weapons that is presumed by law to be possessed with the intention of causing death or serious bodily injury unless possessed by the narrowly defined groups of persons who have legitimate public safety reasons for their possession. Thus *N.J.S.A.* 2C:39–1r defines "weapon" as "anything readily capable of lethal use or of inflicting serious bodily injury"—*i.e.*, a deadly weapon as defined by *N.J.S.A.* 2C:11–1c—and includes not only firearms, but also the *per se* and qualified *per se* weapons enumerated by the various sections of *N.J.S.A.* 2C:39–3. *See, e.g., N.J.S.A.* 2C:39–3a, making it a crime to possess under any circumstances destructive devices as defined by *N.J.S.A.* 2C:39–1c; *N.J.S.A.* 2C:39–3e, making it a crime to possess any of the weapons there described [1] "without any explainable lawful purpose."

But *per se* and qualified *per se* weapons as defined by *N.J.S.A.* 2C:39–1r and 2C:39–3 are not the only class of weapons included within the non-firearm category of deadly weapons. In addition to that class is the class of all those objects having a wide variety of lawful uses but which may take on the character of a deadly weapon because they are both capable of inflicting death or serious bodily injury and have in fact been so used or are intended to be so used or are so fashioned to lead the victim of a crime to believe they can be so used. Thus, the character of this class of objects as deadly weapons is, in every case, entirely circumstantial—that is, did a particular defendant possess a particular object at a particular time and in a particular situation with the intention of using it as a weapon. These distinctions and definitions have, moreover, been recognized as integral to the structure of the Code's approach to weapon crimes. *See, e.g., State v. Kelly,* 118

---

[1] *N.J.S.A.* 2C:39–3 prohibits possession of a "gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus or similar leather band studded with metal filings or razor blades imbedded in wood, ballistic knife...."

N.J. 370, 571 A.2d 1286 (1990); *State v. Wright,* 96 *N.J.* 170, 475 A.2d 38 (1984); *State v. Lee,* 96 *N.J.* 156, 475 A.2d 31 (1984); *State v. Blaine,* 221 *N.J.Super.* 66, 533 A.2d 980 (App.Div.1987).

■ The question before us then is whether the proofs here permitted the finding that defendant's pocket knife was, in the circumstances of this robbery, permissibly categorizable as a deadly weapon. Plainly not. As we explained in *State v. Blaine, supra,* 221 *N.J.Super.* at 70, 533 A.2d 980:

> As we therefore understand the rationale of *Lee,* where the implement is of an equivocal character, susceptible to both lawful and unlawful uses, its status as a weapon whose possession is capable of subjecting its possessor to criminal liability is entirely dependent on the circumstances attending the possession. *See, e.g., State v. Jones,* 198 *N.J.Super.* 553, 569 [564] [487 A.2d 1278] (App.Div.1985), so construing *N.J.S.A.* 2C:39–7. Thus, a pair of scissors taped in such a way as to form a homemade stiletto will justify a conviction under *N.J.S.A.* 2C:39–5(d) when it is found on the person of an intruder into a home. *State v. Lee, supra.* And an Exacto knife having an eight-inch handle and a one-inch razor-like blade, a tool which has obvious lawful uses, loses its innocent character when strapped to a person's ankle inside his sock. *See State v. Wright,* 96 *N.J.* 170 [475 A.2d 38] (1984), app. dism. 469 *U.S.* 1146, 105 *S.Ct.* 890, 83 *L.Ed.*2d 906 (1985).

We also noted in *Blaine* that a pocket knife of just the type this defendant had in his pocket "is, in fact, an implement which is commonly and regularly sold throughout the state as a matter of ordinary commerce." *Id.* at 70–71, 533 A.2d 980. Thus, when it is not used or intended to be used as a weapon—the finding of fact made here by the trial court—there is no contextual basis for concluding that it constitutes a weapon, not merely a potential weapon whose potentiality remained unrealized.

For definitional purposes, we are satisfied of the applicability to Code cases of the Court's pre-Code analysis of when a robber's possession of a potential but not a *per se* weapon permits a finding that the robber was armed. Thus in *State v. Best,* 70 *N.J.* 56, 356 A.2d 385 (1976), the defendant had used a knife in committing a robbery. In addressing the question of whether the defendant was thus armed with a "dangerous weapon," the pre-Code formu-

lation of the armed element,[2] the Court reasoned as follows:

> Possession was established by the victim's testimony that defendant wielded a knife during the course of the robbery. Without this testimony, the State would have failed to sustain the requisite element of possession with respect to both offenses. As to the character of the knife, we note that since the knife was never found, the only evidence submitted was the victim's testimony that the knife was about six inches long and had a wooden handle. Because this testimony may depict an ordinary knife or some other utensil as well as an inherently dangerous knife, the weapon used by Best cannot be deemed to be *dangerous per se.* Therefore, to prove that the knife in question was dangerous, the State had to demonstrate that defendant intended to use the knife as a weapon in the robbery.
>
> [*Id.* at 66, 356 A.2d 385.]

The trial court here found that defendant neither used nor intended to use his pocket knife in the commission of this robbery. The victim was entirely unaware that defendant had a knife in his pocket. The knife was therefore not, in the circumstances, a deadly weapon. Consequently and as a matter of syllogistic imperative, defendant was not armed with a deadly weapon. Thus, he could not have been found guilty of a first-degree robbery.

We recognize that in *State v. Merritt,* 247 *N.J.Super.* 425, 589 A.2d 648 (App.Div.), *certif. denied,* 126 *N.J.* 336, 598 A.2d 893 (1991), relied on by the trial judge in denying defendant's motion to acquit him of first-degree robbery, we held that a defendant who stole firearms during the course of a residential burglary could be found guilty of armed burglary simply by reason of having those firearms in his possession during the course of committing the burglary. We reasoned that mere possession of those firearms met the statutory element of *N.J.S.A.* 2C:18–2b(2) of being armed with a deadly weapon because they were accessible for use by defendant while committing the crime whether or not he actually used or intended to use them. We fully concur in that reasoning but nevertheless think it clear that this case is different. Firearms are *per se* deadly weapons. Here, the implement with which defendant may be regarded to have been armed can be

---

[2] "Dangerous knife" is also included in the listing of *per se* weapons in *N.J.S.A.* 2C:39–1r.

deemed to have been a deadly weapon—the other half of the "armed with a deadly weapon" formulation—only if the implement was, in fact, a deadly weapon. And this implement—the pocket knife—can only be found to have been a deadly weapon if it was used or intended to be used as such. But the trial judge found that that was not the case. Hence defendant may have been armed in the sense that a potential weapon was immediately available to him. But he was not armed with a deadly weapon because of the finding that the implement was not, circumstantially, a deadly weapon at all.

From the foregoing, we think it plain that the fourth-degree possession conviction under *N.J.S.A.* 2C:39–5d is unsustainable as well. As we understand *State v. Kelly, supra,* if the implement is a weapon, the question of whether defendant intends to use it lawfully or unlawfully is immaterial. Thus, *Kelly* held that a defendant in possession of an implement, there a carpet-cutting razor, that is not a *per se* weapon but has the capacity of being used as a weapon, is guilty of the possessory crime as long as the implement is actually intended or may be circumstantially assumed to be intended to be used as a weapon. 118 *N.J.* at 383, 571 *A.*2d 1286. That is to say, it is the intended use that makes the otherwise lawful implement a weapon, and thus the defendant's actual or presumed state of mind in possessing the implement is critical to the determination of whether the implement is a weapon at all. *Kelly* concluded, however, that once the possession is accompanied by that intention, it is not a defense to the possessory crime that defendant intended only to use the weapon lawfully in self-defense, and to that extent, defendant's state of mind is irrelevant. 118 *N.J.* at 387, 571 *A.*2d 1286. Here, we do not reach the second stage of the *Kelly* analysis because, as we held in *Blaine, supra,* 221 *N.J.Super.* at 70, 533 *A.*2d 980, the lack of intent to use the implement as a weapon precludes the conclusion that the implement was a weapon.

We have considered the balance of defendant's arguments, and we are satisfied that they are all without sufficient merit to warrant disposition by written opinion. *R.* 2:11–3(e)(2).

We reverse the conviction of first-degree robbery and fourth-degree weapon possession and remand to the trial court for entry

of a judgment of conviction of second-degree robbery and for resentencing on that conviction.