799 A.2d 679 (2002)
352 N.J. Super. 130
STATE of New Jersey, Plaintiff-Respondent,
v.
Donald CLARK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 4, 2002.
Decided June 20, 2002.
*680 Peter A. Garcia, Acting Public Defender, attorney for appellant (M. Virginia Barta, Assistant Deputy Public Defender, of counsel and on the brief).
Appellant filed a pro se brief.
William H. Schmidt, Bergen County Prosecutor, attorney for respondent (Annmarie Cozzi, Assistant Prosecutor, of counsel and on the brief).
Before Judges PETRELLA, KESTIN and STEINBERG.
The opinion of the court was delivered by KESTIN, J.A.D.
In these consolidated matters arising after a remand, defendant appeals from convictions, following guilty pleas, for two counts of second degree burglary and one count of third degree theft; from the concurrent sentences imposed thereon; and from the trial court's denial of his motion to withdraw his guilty plea to the second degree burglary charges. Defendant raises the following issues on appeal:
POINT I DEFENDANT'S CONVICTIONS FOR ARMED BURGLARY MUST BE VACATED BECAUSE THE FACTUAL BASIS FOR HIS GUILTY PLEAS DID NOT EVINCE AN INTENT TO USE THE KNIFE DURING THE BURGLARIES.
POINT II DEFENDANT'S SENTENCE SHOULD BE REDUCED TO THE PRESUMPTIVE TERM.
In a pro se letter brief, defendant argues further that no adequate factual basis was given, or could have been given, to support a conviction for armed burglary. We affirm.
The procedural history of this matter is complex. An August 8, 1996 indictment, No. 96-08-1064, charged defendant with two counts of burglary while armed with a deadly weapon, a knife, in violation of N.J.S.A. 2C:18-2 (second degree); two counts of theft in violation of N.J.S.A. 2C:20-3 (third degree); and unlawful possession of the knife in violation of N.J.S.A. 2C:39-5d (fourth degree). A subsequent indictment, No. 97-01-00, filed January 27, 1998, charged defendant with four third-degree crimes: theft (receiving) in violation of N.J.S.A. 2C:20-7; possession of cocaine in violation of N.J.S.A. 2C:35-10a(1); terroristic threat in violation of N.J.S.A. 2C:12-3b; and possession of a weapon, a knife, for unlawful purpose in violation of N.J.S.A. 2C:39-4d. The latter indictment also included a fifth count charging unlawful possession of the knife in violation of N.J.S.A. 2C:39-5d, a fourth-degree crime.
A plea proceeding occurred on June 23, 1997. Pursuant to a plea agreement, defendant pled guilty to the two second-degree burglary counts of the earlier indictment and the theft (receiving) and drug possession counts of the later indictment. The plea agreement provided that *681 the remaining counts of both indictments would be dismissed along with charges of related disorderly persons offenses. The agreement also provided that the State would recommend a twelve-year sentence, reserving the right to argue for consecutive terms and a period of parole ineligibility. At the plea proceeding, defendant acknowledged his understanding that he might be reincarcerated on a parole violation in respect of a prior conviction.
The plea proceeding colloquy consisted of defense counsel's questions regarding the plea agreement, procedural aspects, the legal consequences of the plea, and the factual basis. Among the factual bases offered was:
MR. PLUNKETT [defense counsel]: And on indictment 1064-96, were you in Saddle Brook and did you enter a residence on 110 North 5th Street to commit an offense therein?
THE DEFENDANT: I don't know what the address was, but yes, I did.
MR. PLUNKETT: Was it your purpose to enter into that residence to steal anything of value, and at that time were you also wearing on the outside of your jacket
THE DEFENDANT: Yes, a belt
MR. PLUNKETT: Outside your belt a knife?
THE DEFENDANT: Yes, I did.
MS. BAGLIVI [the assistant prosecutor]: Did he have permission to enter into this house?
MR. PLUNKETT: Did you have permission to enter into the structure?
THE DEFENDANT: No.
MR. PLUNKETT: With regard to count three, did you similarly enter a residence at 110 North 5th Street in Saddle Brook?
THE DEFENDANT: Again, I don't know the address.
MR. PLUNKETT: This second structure in Saddle Brook, your intention was also the same?
THE DEFENDANT: Yes.
MR. PLUNKETT: In other words, you were entering for the purpose to steal?
THE DEFENDANT: Yes.
MR. PLUNKETT: This was the same day?
THE DEFENDANT: Yes.
MR. PLUNKETT: Did you have permission to enter into that residence?
THE DEFENDANT: No, I did not.
The plea was accepted and entered.
On September 5, 1997, the trial court sentenced defendant to an aggregate prison term of twelve years with four years of parole ineligibility. The sentences on each of the indictments were consecutive to each other. The two second-degree convictions in indictment No. 96-08-1064 drew concurrent terms of seven years' imprisonment, each with two years of parole ineligibility. These concurrent terms were consecutive both to an earlier term defendant was then serving and to the sentence for the convictions on indictment No. 97-01-00, which specified two concurrent terms of five years imprisonment, each with two years of parole ineligibility for those third-degree convictions.
Defendant's appeal from the sentence was heard on an excessive sentence oral argument calendar on February 8, 1999. Defendant argued therein "that there is no factual basis for some of the counts to which [he] pled guilty[,]" and that his argument would "focus on one of the two indictments ... when he pled guilty to possession of stolen property [but] he never admitted that the property he had was stolen." He also argued specifically regarding the possession of cocaine charge that the cocaine found on his person was *682 owned and possessed by his girlfriend. Defendant did not argue specifically that the factual bases he had given for the two second-degree burglary convictions had been deficient in any particular.
In ruling on the sentencing appeal, we reversed and remanded in an order providing:
The court finds that although a sufficient factual foundation was established for defendant's guilty plea to counts one and two of Indictment XX-XX-XXXX-X and count two of Indictment XX-XX-XXXXX-X, a sufficient factual foundation was not established for defendant's guilty plea to count one of Indictment XX-XX-XXXXX-X.
Accordingly, defendant's pleas to the aforesaid charges, the dismissal of the other charges in Indictments XX-XX-XXXX-X and XX-XX-XXXXX-X, and defendant's convictions and sentencing are all vacated and the matter (including all counts on both indictments) is remanded to the trial court for further proceedings which may include repleading and/or proceeding to trial.
The remand proceeding in the trial court occurred on June 17, 1999. On that occasion another plea agreement was negotiated. Defendant agreed to plead guilty to the two second-degree burglary counts of indictment No. 96-08-1064, and the theft (receiving) count of indictment No. 97-01-0005. The State agreed to dismiss the remaining counts of both indictments along with related municipal summonses, and to recommend a maximum sentence on both indictments of ten years' imprisonment with three years of parole ineligibility on the understanding that "[t]he custodial sentences shall be concurrent to each other."
In an extended colloquy between defendant and the judge, defendant acknowledged, inter alia, that he was subject to an aggregate term of imprisonment for up to ten years with three years of parole ineligibility. Once again, the factual bases were elicited through questioning by defense counsel. In respect of the armed burglary, the following exchange occurred:
MR. McGINNITY [defense counsel]: Now, I'm going to draw your attention, sir, to the date of May 11th, 1996 in the municipality of Saddle Brook, specifically the address of 191 North Sixth Street. Were you in or about those premises on that date, and if so, would you tell the Judge the circumstances of that?
THE DEFENDANT: Yes. I went thereI don't know the exact address, you know, but I went to thatthere to do a burglary and get some money.
MR. McGINNITY: Did you enter into 191 North Sixth Street in Saddle Brook?
THE DEFENDANT: I guess that's the address.
MR. McGINNITY: You went there with the owner's permission to enter the premises?
THE DEFENDANT: No.
MR. McGINNITY: Did youin fact, you didn't know who lived there?
THE DEFENDANT: No.
MR. McGINNITY: And when you went in there to those premises, your intention was to do what?
THE DEFENDANT: To get some money.
THE COURT: To steal whatever you could find of value?
THE DEFENDANT: Yes.
MR. McGINNITY: Did you have a knife in your possession when you entered into the premises of 191 North Sixth Street?
THE DEFENDANT: Yes, but it wasit wasn't a weapon.

*683 MR. McGINNITY: Did you have a knife on you, sir?
THE DEFENDANT: Yes.
MR. McGINNITY: Now, let me draw your attention
THE COURT: Well, wait a second, I'm not going to
THE DEFENDANT: Go ahead.
THE COURT: Define the knife you had.
THE DEFENDANT: It was a folding lock blade knife in a case on my belt.
THE COURT: And when opened, how long is the entire knife blade and handle?
THE DEFENDANT: About this much (indicating).
MR. McGINNITY: Let the record reflect the blade as long as your
THE DEFENDANT: Blade is about this long (indicating).
THE COURT: So about four inches?
THE DEFENDANT: Three and a halfwhat does that mean?
THE COURT: No, no magic measurement.
MR. BURKE [the assistant prosecutor]: Judge, the State is satisfied.
THE COURT: State is satisfied.
All right. Move onto the next one.
MR. McGINNITY: All right. Now, I'm going to draw your attention to that same date, same location, within 15 or 20 minutes of the time you went intointo 191 North Sixth Street in Saddle Brook, did you enter into 110 North Fifth Street in Saddle Brook?
THE DEFENDANT: Yes.
MR. McGINNITY: Did you know anybody in those premises?
THE DEFENDANT: No, I didn't.
MR. McGINNITY: Did anybody give you permission to enter into that premises?
THE DEFENDANT: No.
MR. McGINNITY: What was your intention?
THE DEFENDANT: The same as the other one.
MR. McGINNITY: And did you have
THE COURT: Well, let's state it. To steal whatever you could find of value?
THE DEFENDANT: Yes.
MR. McGINNITY: And did you have that knife that you just described to the court in your possession at that time when you went into 110 North Fifth Street?
THE DEFENDANT: Yes.
THE COURT: Satisfied?
MR. BURKE: Yes.
THE COURT: State's satisfied.
MR. McGINNITY: All right. That resolves 1064-96.
The plea was accepted and entered.
Sentencing occurred on July 9, 1999. In accordance with the terms of the plea agreement, defendant was sentenced, on one of the armed burglary convictions, to serve a prison term of ten years with three years of parole ineligibility and, on the second armed burglary conviction, to serve a concurrent ten-year term. The sentence for receiving stolen property was a five-year term, also concurrent. On January 20, 2000, defendant filed a notice of appeal from the judgments of conviction.
On August 1, 2000, he filed a motion in the trial court for vacation of this guilty plea to armed burglary and for "correcti[on of] any illegal sentence imposed." At oral argument on the motion, counsel contended that there was:
an insufficient factual basis concerning what is known as a armed burglary, namely that Mr. Clark actually indicated *684 in the context of his plea that he did not intend that the knife that he had on his possession [] was even a weapon and that is born[e] out in the transcript.
But even if that were not said in the transcript, the case law, State v. Brown and State v. Riley, those citations to the Court in a letter dated September 22 of this year, which indicate basically that in the context of a robbery, which of course is not what we have here, a robbery.
Mere possession of a knife on a person which is not displayed or used does not elevate robbery to armed robbery.
Defendant argued that he had used the knife as a tool, and not as a weapon.
In ruling on defendant's motion, Judge Meehan addressed the ground offered. He denied the motion for the following reasons, among others:
[W]ith regard to this matter, the defendant wants to rely upon certain cases like State v. [Merritt, 247 N.J.Super. 425, 589 A.2d 648 (App.Div.), certif. denied, 126 N.J. 336, 598 A.2d 893 (1991) ].
The main issue with the [Merritt] case, we're dealing with armed, and certainly not with what a deadly weapon was.
The defense also wants to rely on State v. Riley, 306 N.J.Super. 141, 703 A.2d 347 (App.Div.1997); and State v. Brown, 325 N.J.Super. 447, 739 A.2d 975 (App.Div.1999), [certif. denied, 163 N.J. 76, 747 A.2d 285 (2000),] which held in those cases that the defendant had to use or intended to use a knife in the commission of a robbery.
Again, in the case at bar, without citing any authority because there is none, that's conceded by their capable counsel, is asking this court to extend the Riley, Brown cases [to] armed burglary.

* * *
... Brown dealt with facts and circumstances of a particular robbery in defining a deadly weapon in a robbery. Robbery is a commission of a larceny where there is force or fear of force, and like robbery, burglary does not require the use of force or the fear of the use of force. It's not the use of a deadly weapon. It's the [possession] of a weapon that makes it such or a deadly weapon, and it merely requires that a defendant possess a deadly weapon at the time he commits the burglary, not that they use it.

* * * *
As we tell jurors, at least judges, when you evaluate something like this, to use your common sense and experience of a lifetime. Here's a knife. It's being used to help obtain access to a building. And the purpose of this law is that people who recognize people in burglaries especially of homes, that if the homeowner is there and the burglar has a weapon, confrontation and injury is likely to ensue, and that's the purpose of the statute.
So those things that may occur don't occur, and they give lesser weight to someone who goes in with nothing. No arms. No weapons. Nothing that can kill somebody.
Certainly a three and a half, four inch knife can and has killed people, and the only purpose is to assist in the burglary, and only common sense tells you, anyone with good judgment, that in this matter if the homeowner walks out, what are you doing here, they're going to be facing the knife and the injuries that can be attend[ant] thereto.
On November 17, 2000, defendant appealed from the order denying the motion to withdraw his guilty plea. In an order *685 entered on April 16, 2001, on defendant's motion, we consolidated that appeal with defendant's appeal from the judgments of conviction.
After reviewing the record in the light of the arguments advanced by the parties, and applying pertinent legal standards as established in statute and caselaw, we are in substantial agreement with the reasoning expressed by Judge Meehan in denying the motion for a new trial. We need not parse the particulars of defendant's possession and use of the knife. Defendant clearly admitted to possession of the knife. The obvious purpose of the Legislature in enacting the armed burglary provisions of N.J.S.A. 2C:18-2, i.e., "armed with... a deadly weapon," as a crime of higher degree than simple burglary was to deter the commission of burglaries while so armed in order to protect potential victims from greater risk of injury when an implement that could be used as a deadly weapon is involved. Viewed in that light, the statute manifestly establishes as an element the mere possession of such an implement during a burglary. On that basis, the holdings of Brown, supra, 325 N.J.Super. 447, 739 A.2d 975, and Riley, supra, 306 N.J.Super. 141, 703 A.2d 347, are distinguishable. Cf. Cannel, New Jersey Criminal Code Annotated, comment 4 on N.J.S.A. 2C:39-5 (2002) (cited in State v. Burford, 163 N.J. 16, 20, 746 A.2d 998 (2000)). We held in both Brown and Riley that the mere presence of a knife on the defendant's person, which was not used as a weapon, could not elevate a robbery from second degree to first degree because the purpose of the robbery grading distinction was to establish a difference where the weapon had been used to commit the crime. In Burford, the Supreme Court made a like comparison in determining that the "violent crime" standard of the No Early Release Act, N.J.S.A. 2C:43-7.2, was not met in a case involving second degree eluding, N.J.S.A. 2C:29-2b.
Here the presence of an item that could be used as a deadly weaponespecially given defendant's admission that he carried it externally, on his belt, presumably for easy accesssatisfied the requirements of the armed burglary standard of N.J.S.A. 2C:18-2. See Merritt, supra, 247 N.J.Super. at 430, 589 A.2d 648 (opining that "a person who steals a weapon [during the burglary] may be found to have been armed, without showing that he actually used or intended to use the weapon, so long as he had immediate access to the weapon during the offense"). It is of no consequence, given the manifest purpose of the statute, that the article in question might also have innocent uses.
As respects the sentence, our review of the record in the light of the arguments advanced by the parties discloses no misapplication of the trial court's discretion in the sentence imposed.
Affirmed.