974 A.2d 1021

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MARIBEL ROLON A/K/A RODRIGUEZ, DEFENDANT–RESPONDENT.

Argued April 27, 2009—Decided July 13, 2009.

*Robert E. Bonpietro*, Deputy Attorney General, argued the cause for appellant (*Anne Milgram*, Attorney General of New Jersey, attorney).

*Alison S. Perrone*, Designated Counsel, argued the cause for respondent (*Yvonne Smith Segars*, Public Defender, attorney).

PER CURIAM.

This appeal centers on the meaning of the phrase "armed with ... a deadly weapon" as used in the grading provision of the robbery statute, which elevates the crime from second to first degree. *N.J.S.A.* 2C:15–1(b). Defendant stated that she took

money from the victim's purse, and that a folding knife fell out of her pocket during a subsequent struggle with the victim. She maintained that she never used or intended to use the knife as a weapon. During deliberations, responding to a question from the jury, the trial judge said that defendant's "intent with respect to the object [(the folding knife)] is irrelevant." The Appellate Division reversed and remanded, concluding that in the circumstances of this case, that explanation, which eliminated any consideration of defendant's intent, was incorrect and irremediably confusing to the jury. We agree and affirm.

## I.

On September 12, 2005, at approximately 8:30 a.m., defendant Maribel Rolon entered Kalamio, a restaurant in Elizabeth, New Jersey. At the time, Anna Padilla, the owner of the restaurant, and Maria Ramirez, a restaurant employee, were working in the kitchen. Defendant testified that she walked around the counter area and noticed an open cabinet that held a purse, and that she looked into the purse for money. While she was doing so, Padilla emerged from the kitchen and observed her. A struggle ensued.

The nature of that struggle is disputed. According to Padilla, she saw defendant looking into her pocketbook and holding money in her hand. Defendant attempted to flee and a fracas occurred. Padilla testified that during the struggle defendant pulled her necklace off. Padilla then grabbed defendant by her wrists. Defendant dropped the necklace and money, took out a knife, and threw a napkin holder, which hit Padilla on the head. At some point, defendant either dropped the knife, or Padilla knocked the knife out of defendant's hands. As defendant broke free from Padilla's grasp, a customer entered the restaurant and grabbed defendant by the hands.

Defendant's version of the struggle differed distinctly from Padilla's. Acknowledging that she took money from Padilla's purse, defendant testified that Padilla grabbed her. Defendant said she told Padilla to let her go, but did not kick or punch her.

She also denied taking Padilla's necklace. Further, defendant asserted that she never pulled a knife on Padilla, but admitted that she had a knife in the front pocket of her jeans, which fell out during the struggle. She stated that the blade was not open before or at the time the knife hit the floor. Defendant testified that she never held the knife in her hand, never brandished the knife, and never threatened Padilla with the knife. She escaped from Padilla's grasp, but a third person detained her at the door.

Ramirez testified that she had been working in the kitchen, observed defendant and Padilla fighting, and heard Padilla yell to "call the police, that the woman had a knife." Although Ramirez saw defendant holding Padilla's necklace, she• did not observe defendant with a knife in her hand.

In response to Ramirez's call, Detective Clarence Cunningham arrived at the scene and apprehended defendant as she was running out of the restaurant. Cunningham testified that the "restaurant was in disarray, . . . there was money on the floor, the owner's pocketbook was thrown on the floor." Cunningham recovered a folding knife; the blade was open when he discovered it.

Defendant was indicted for first-degree robbery by knowingly using force or knowingly inflicting bodily injury, while armed with and/or threatening the immediate use of a deadly weapon, *N.J.S.A.* 2C:15–1(a)(1), (b) (count one); first-degree robbery by knowingly threatening immediate bodily injury or purposely putting the victim in fear of immediate bodily injury, while armed with and/or threatening the immediate use of a deadly weapon, *N.J.S.A.* 2C:15–1(a)(2), (b) (count two); second-degree aggravated assault by attempting to cause serious bodily injury, *N.J.S.A.* 2C:12–1(b)(1) (count three); third-degree aggravated assault by attempting to cause bodily injury with a deadly weapon, *N.J.S.A.* 2C:12–1(b)(2) (count four); third-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(d) (count five); and fourth-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(d) (count six). Defendant was indicted separately for fourth-degree certain persons not to have weapons, *N.J.S.A.* 2C:39–7(a).

A trial ensued at which the witnesses testified to the outlined facts.

At the close of the trial, the trial judge charged the jury as follows:

Now a section of our statute provides that robbery is a crime of the second degree, except that it becomes a crime and is a crime of the first degree if the robber is armed with or uses or threatens immediate use of a deadly weapon.

Now the words armed with is distinguishable from mere possession. Armed with means possessing an implement in a way that makes it available for use as a weapon.

So in this case, the defendant—it's alleged the defendant was armed with [a] knife, a deadly weapon in the course—while in the course of committing the robbery. In order for you to determine the answer to the question, in this question, you must understand the meaning of the term deadly weapon.

A deadly weapon is any firearm or other weapon, device, instrument, material or substance which in the manner it is used ... or is intended to be used, is known to be capable of producing serious bodily injury or which in the manner it is fashioned would lead the victim to reasonably believe it could be capable of producing death or serious bodily injury.

In this case the State alleges that the defendant was armed with a knife and that is an item that was produced into evidence. You must determine if this object qualifies as a deadly weapon and if the State has proven beyond a reasonable doubt that the defendant was in the course of committing a robbery.

During deliberations, the jury had a number of questions, one of which was: "Definition of armed?" Over defendant's objection, the judge answered the question as follows:

I have some good news and bad news [—] the code does not define the word armed. However, the cases distinguish armed from mere possession. It's different than mere possession and the case law seems to indicate that being armed means possessing an implement in a way that makes it available for use as a weapon. The defendant's intent with respect to the object is irrelevant. So it's something more than possession, it means possessing an implement in a way that makes it available for use as a weapon. I hope that helps you.

The jury convicted defendant of first-degree robbery, contrary to *N.J.S.A.* 2C:15–1(a)(1), and fourth-degree unlawful possession of a weapon, contrary to *N.J.S.A.* 2C:39–5(d), and acquitted her on all other counts of the indictment. In addition, defendant pleaded guilty to the single count of the separate indictment of certain persons not to have weapons, contrary to *N.J.S.A.* 2C:39–7(a).

She was sentenced to an aggregate custodial term of twelve years subject to the No Early Release Act, *N.J.S.A.* 2C:43–7.2.

Defendant appealed, arguing, among other things, that the trial judge erred in charging the jury that her intent with respect to the use of a weapon was irrelevant, and that the inconsistent verdicts demonstrated that the jury was misled by the trial judge's erroneous instructions on first-degree robbery.

The Appellate Division agreed, concluding that the trial "court's response to a request from the jury for a definition of 'armed' was fatally defective." *State v. Rolon,* 400 *N.J.Super.* 608, 611, 948 *A.*2d 735 (App.Div.2008). The panel examined the robbery cases of *State v. Riley,* 306 *N.J.Super.* 141, 703 *A.*2d 347 (App.Div.1997), and *State v. Brown,* 325 *N.J.Super.* 447, 739 *A.*2d 975 (App.Div. 1999), *certif. denied,* 163 *N.J.* 76, 747 *A.*2d 285 (2000), and noted that they

> stand for the proposition that in a robbery case, where the potential weapon is not per se a deadly weapon, like a firearm, a defendant cannot be considered to have been "armed with a deadly weapon" unless he had immediate access to the potential weapon as well as an intent to use it in a way that is "capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury."
>
> [*Rolon, supra,* 400 *N.J.Super.* at 616, 948 *A.*2d 735 (citing *N.J.S.A.* 2C:11–1(c)).]

The panel therefore concluded that the instruction was incorrect, because it told the jury that "it could convict defendant of first-degree robbery even if it believed defendant never actually used, threatened to use, or intended to use the knife." *Id.* at 617, 747 *A.*2d 285. Accordingly, the panel reversed defendant's first-degree robbery conviction and remanded for a new trial. *Ibid.* We granted the State's petition for certification. 196 *N.J.* 599, 960 *A.*2d 394 (2008).

## II.

The State argues, in essence, that defendant's folding knife was a deadly weapon because it had the capacity to cause death or serious bodily injury and was accessible to defendant during the

theft, thus satisfying the "armed with a deadly weapon" standard. According to the State, defendant's intent was irrelevant.

Defendant counters that in a case in which the item possessed has legitimate as well as illegitimate uses, "armed with a deadly weapon" requires that a defendant have both immediate access to the item and the intent to use it as a deadly weapon, because the grading provision, *N.J.S.A.* 2C:15–1(b), and the definition of "deadly weapon," *N.J.S.A.* 2C:11–1(c), must be read together. Defendant concedes that she "could be considered armed" because she had a folding knife accessible to her in her pocket, but asserts that she was not "armed with a deadly weapon" because she did not have the intent to use the knife as such.

## III.

We turn first to the statute. Robbery is defined in the Code of Criminal Justice ("Code") as follows:

> A person is guilty of robbery if, in the course of committing a theft, he:
>
> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>
> (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
>
> [*N.J.S.A.* 2C:15–1(a).]

The grading provision of the robbery statute states:

> Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, *or is armed with,* or uses or threatens the immediate use of *a deadly weapon.*
>
> [*N.J.S.A.* 2C:15–1(b) (emphasis added).]

■ "Armed with" is not defined in the Code, but case law establishes that it means possession of, and immediate access to, the deadly weapon. *See Brown, supra,* 325 *N.J.Super.* at 454, 739 *A.*2d 975 (noting evidence that weapon was immediately available to defendant during robbery establishes that defendant was

armed); *State v. Merritt,* 247 *N.J.Super.* 425, 430, 589 *A.*2d 648 (App.Div.) ("armed" means possession and immediate access to weapon), *certif. denied,* 126 *N.J.* 336, 598 *A.*2d 893 (1991).

"Deadly weapon," in turn, is defined as

any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, *which in the manner it is used or is intended to be used,* is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury[.]

[*N.J.S.A.* 2C:11–1(c) (emphasis added).]

" 'Serious bodily injury' means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ[.]" *N.J.S.A.* 2C:11–1(b).

We confine our analysis to the underscored portion of *N.J.S.A.* 2C:15–1(b) because that is the crux of the interpretative issue before us. Defendant concedes that she "could be considered 'armed' " with a folding knife but contends that that knife was not a "deadly weapon" because she did not use it or intend to use it as such. The State maintains that defendant was "armed with a deadly weapon" because she possessed a knife that had the capacity to cause death or serious bodily injury and that defendant's intent was irrelevant. In determining the meaning to be ascribed to that language, we look first to the words chosen by the Legislature because that is the most "direct path" toward gleaning legislative intent. *State v. Smith,* 197 *N.J.* 325, 332, 963 *A.*2d 281 (2009). In doing so, we examine the plain language of the statute and accord to the words their ordinary meaning. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005).

In defining the term "deadly weapon," the Legislature established two distinct categories. The first consists solely of firearms, which the drafters specifically declared to meet the definition of "deadly weapon." *N.J.S.A.* 2C:11–1(c). The second is made up of any "other weapon, device, instrument, material or substance ... which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily

injury." *Ibid.* That category potentially includes all material items that are not firearms.

■ Under the statute, the "deadly weapon" element of "armed with a deadly weapon" is automatically satisfied if the weapon is a firearm. Contrariwise, if the weapon is not a firearm, but an object with legitimate uses, for example a paperweight or a pair of scissors, its use or intended use will determine whether it meets the deadly weapon standard. Indeed, the dichotomy that we have described has been recognized in the case law that has developed around the grading provisions of the robbery statutes. Thus, we turn to that case law.

## IV.

In *State v. Riley, supra,* the Appellate Division addressed the "armed with a deadly weapon" language in a robbery case. 306 *N.J.Super.* at 146–48, 703 *A.*2d 347. There, the defendant knocked a victim down and took his money. *Id.* at 144–45, 703 *A.*2d 347. When the defendant was apprehended, he had a folding knife in his pocket. *Id.* at 145, 703 *A.*2d 347. The question was whether he was "armed with a deadly weapon." *Id.* at 145–46, 703 *A.*2d 347. In resolving that issue, the court recognized the two discrete categories established by *N.J.S.A.* 2C:11–1(c): (1) fire-arms, and (2) "every other material object that can be used or intended to be used in such a way as to cause death or serious bodily injury." *Id.* at 146, 703 *A.*2d 347. Of the latter category, the panel observed that there is

the class of all those objects having a wide variety of lawful uses but which may take on the character of a deadly weapon because they are both capable of inflicting death or serious bodily injury and have in fact been so used or are intended to be so used or are so fashioned to lead the victim of a crime to believe they can be so used. Thus, the character of this class of objects as deadly weapons is, in every case, entirely circumstantial—that is, did a particular defendant possess a particular object at a particular time and in a particular situation with the intention of using it as a weapon. These distinctions and definitions have, moreover, been recognized as integral to the structure of the Code's approach to weapon crimes. *See, e.g., State v. Kelly,* 118 *N.J.* 370, 571 *A.*2d 1286 (1990); *State*

v. *Wright*, 96 *N.J.* 170, 475 *A.*2d 38 (1984); *State v. Lee*, 96 *N.J.* 156, 475 *A.*2d 31 (1984); *State v. Blaine*, 221 *N.J.Super.* 66, 533 *A.*2d 980 (App.Div.1987).
[*Id.* at 147–48, 703 *A.*2d 347.]

Thus, under *Riley*, the possession and accessibility of a firearm vaults the statutory threshold with nothing more; however, in the case of objects with both legitimate and illegitimate purposes, the use of or intent to use the item is pivotal to the determination of deadliness. Applying that standard, the court in *Riley* ruled that the defendant could not be convicted of first-degree robbery (while armed with a deadly weapon) because there was no evidence that he used or intended to use the knife against the victim. *Id.* at 149, 703 *A.*2d 347.

The rationale of *Riley* was adopted by the Appellate Division in *Brown, supra,* where the defendant had a kitchen knife in his pocket during the course of a robbery, and there was no evidence that he intended to use it as a weapon. 325 *N.J.Super.* at 450–51, 454, 739 *A.*2d 975. There, the court stated:

As in *Riley*, the knife was neither held by defendant nor seen by the victim. The only evidence was that it was immediately available to defendant during the robbery. While that establishes that defendant was armed, *State v. Merritt,* [*supra,* 247 *N.J.Super.* at 429–30, 589 *A.*2d 648], it is not sufficient evidence that the weapon was a "deadly weapon" as defined by *N.J.S.A.* 2C:11–1c.
[325 *N.J.Super.* at 454, 739 *A.*2d 975.]

That parsing of the statute also finds support in our reasoning in possessory weapons cases. In *Lee, supra,* for example, we observed that "[s]ome objects that may be used as weapons also have more innocent purposes." 96 *N.J.* at 161, 475 *A.*2d 31. Likewise, the Appellate Division noted in *Blaine, supra,* that, "where the implement is of an equivocal character, susceptible to both lawful and unlawful uses, its status as a weapon whose possession is capable of subjecting its possessor to criminal liability is entirely dependent on the circumstances attending the possession." 221 *N.J.Super.* at 70, 533 *A.*2d 980.

We think the Appellate Division properly adopted the approach of *Riley* and *Brown.* Those cases, which were decided under the robbery statute, stand for the proposition that, where the potential

weapon is not a firearm, a defendant cannot be considered to have been "armed with a deadly weapon" unless he had immediate access to the potential weapon *and* an intent to use it in a way that is "capable of producing death or serious bodily injury." *N.J.S.A.* 2C:11–1(c) (defining deadly weapon).

█ We are unpersuaded by the State's reliance on *Merritt, supra,* 247 *N.J.Super.* at 429–30, 589 *A.*2d 648, and *State v. Clark,* 352 *N.J.Super.* 130, 799 *A.*2d 679 (App.Div.), *certif. denied,* 174 *N.J.* 545, 810 *A.*2d 65 (2002),[1] cases that were decided under an entirely different statutory scheme, *N.J.S.A.* 2C:18–2. We likewise reject the State's argument that "armed with a deadly weapon" requires proof only that a defendant has possession of the weapon in a manner which makes it readily available for use and that intent has no relevance to that analysis. The flaw in that approach is that it focuses solely on "armed with" and omits consideration of the definition of "deadly weapon." Because an armed robbery conviction is dependent upon proof that a defendant was "armed with a deadly weapon" and because the determination of whether an equivocal item is in fact a "deadly weapon" depends upon how the defendant used or intended to use it, the defendant's intent regarding the item cannot be "irrelevant." [2]

## V.

█ That brings us to the charge in this case in which the issue was whether defendant was armed with a deadly weapon. The resolution of that issue required the jury to determine (1) whether defendant's knife was a deadly weapon, and (2) whether she was

---

[1] Those cases involve the burglary statute, *N.J.S.A.* 2C:18–2, which is not before us. We do not decide here whether our reasoning regarding the robbery statute is applicable in the burglary setting.

[2] Even if we viewed the statute as ambiguous, based on the State's interpretation, the rule of lenity would require that the statute be interpreted in defendant's favor with the exact result we have reached here. *State v. D.A.,* 191 *N.J.* 158, 164, 923 *A.*2d 217 (2007).

armed with it. Because the knife was not per se a deadly weapon, the jury had to assess whether defendant used it or intended to use it as such. When the judge answered the question "Definition of armed?" by saying "armed means possessing an implement in a way that makes it available for use as a weapon," he was correct. However, when he added, "[t]he defendant's intent with respect to the object is irrelevant," he misled the jury by permitting it to convict defendant of first-degree robbery even if it believed she never actually used or intended to use the knife and that, as she claimed, it simply fell out of her pocket during the struggle.

If the jury believed defendant used or intended to use the knife against the victim, the definition of deadly weapon was satisfied. If, on the other hand, the jury believed defendant's version of the events, that is, that she never used or intended to use the closed folding knife that simply dropped out of her pocket onto the floor during the scuffle, the definition of deadly weapon was not met. The jury had to understand that distinction with respect to which defendant's intent was critical. As in all cases, defendant's intent was to be ascertained by the jury based upon what she said and did and upon all the circumstances surrounding her interaction with the victim. *See, e.g., Riley, supra,* 306 *N.J.Super.* at 147, 703 *A.*2d 347 (noting that character of class of objects as deadly weapons is entirely circumstantial). In eliminating the "intent" issue, the judge precluded a proper evaluation of the evidence, and erred in a way that requires our intervention. Consequently, defendant's first-degree robbery conviction must be reversed and remanded for a new trial. *See State v. Lopez,* 187 *N.J.* 91, 101, 900 *A.*2d 779 (2006) (" '[E]rroneous instructions on material issues are presumed to be reversible error[.]' " (quoting *State v. Marshall,* 173 *N.J.* 343, 359, 801 *A.*2d 1142 (2002))).

## VI.

The judgment of the Appellate Division is affirmed.

Justice LONG, concurring.

I am in accord with the Court's disposition of this case and with its reading of *N.J.S.A.* 2C:15–1(b). I write separately to address *State v. Merritt,* 247 *N.J.Super.* 425, 589 *A.*2d 648 (App.Div.), *certif. denied,* 126 *N.J.* 336, 598 *A.*2d 893 (1991), and *State v. Clark,* 352 *N.J.Super.* 130, 799 *A.*2d 679 (App.Div.), *certif. denied,* 174 *N.J.* 545, 810 *A.*2d 65 (2002), two decisions interpreting cognate language in the burglary statute.

The burglary statute provides in relevant part:

Grading. Burglary is a crime of the second degree if in the course of committing the offense, the actor:

   (1) Purposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone; or

   (2) *Is armed with* or displays what appear to be explosives or *a deadly weapon.*

Otherwise burglary is a crime of the third degree. An act shall be deemed "in the course of committing" an offense if it occurs in an attempt to commit an offense or in immediate flight after the attempt or commission.

[*N.J.S.A.* 2C:18–2(b) (emphasis added).]

The underscored language was at the heart of *Merritt, supra,* in which the defendant participated in the burglary of a residence that netted seven guns, one of which was loaded. 247 *N.J.Super.* at 428, 589 *A.*2d 648. After he was convicted of second-degree armed burglary, the defendant argued that the guns "were simply proceeds of the theft and that he was not 'armed' because he did not use or intend to use firearms in connection with the offense." *Id.* at 428–29, 589 *A.*2d 648. The Appellate Division disagreed, concluding that the defendant could be found guilty of burglary while armed with a deadly weapon because the stolen guns were in his possession and accessible to him during the burglary. *Id.* at 431, 589 *A.*2d 648.

Following *Merritt,* the Appellate Division decided *State v. Riley,* 306 *N.J.Super.* 141, 146–48, 703 *A.*2d 347 (App.Div.1997), and there addressed the "armed with a deadly weapon" language in a robbery case. There, the defendant, who had a folding knife in his pocket, struck the victim and took his money. *Id.* at 144–45, 703 *A.*2d 347. In resolving the issue of whether the defendant was

"armed with a deadly weapon," Judge Pressler, writing for the panel, recognized the two broad categories established by *N.J.S.A.* 2C:11–1(c): (1) firearms, and (2) "every other material object that can be used or intended to be used in such a way as to cause death or serious bodily injury." *Id.* at 146, 703 *A.*2d 347. Of the latter category, she said:

> [T]he character of this class of objects as deadly weapons is, in every case, entirely circumstantial—that is, did a particular defendant possess a particular object at a particular time and in a particular situation with the intention of using it as a weapon. These distinctions and definitions have, moreover, been recognized as integral to the structure of the Code's approach to weapon crimes. *See, e.g., State v. Kelly,* 118 *N.J.* 370, 571 *A.*2d 1286 (1990); *State v. Wright,* 96 *N.J.* 170, 475 *A.*2d 38 (1984); *State v. Lee,* 96 *N.J.* 156, 475 *A.*2d 31 (1984); *State v. Blaine,* 221 *N.J.Super.* 66, 533 *A.*2d 980 (App.Div.1987).
>
> [*Id.* at 147–48, 703 *A.*2d 347.]

Thus, under *Riley,* the use or intended use of items that have both legitimate and illegitimate purposes is the critical path to the determination of deadliness. *See also State v. Brown,* 325 *N.J.Super.* 447, 454, 739 *A.*2d 975 (App.Div.1999) (finding that evidence that knife was available to defendant, without evidence of intended use as weapon, does not suffice to show that weapon was "deadly weapon"), *certif. denied,* 163 *N.J.* 76, 747 *A.*2d 285 (2000). The majority here subscribes to that analysis, as do I.

Subsequently, the Appellate Division decided *State v. Clark, supra,* in which the defendant pleaded guilty to burglary of a dwelling. 352 *N.J.Super.* at 132–36, 799 *A.*2d 679. At the plea hearing, he admitted that at the time of the burglary he had a folding knife in a case on his belt, but contended that "it wasn't a weapon." *Id.* at 135–36, 799 *A.*2d 679. After the judge imposed a sentence for armed burglary, the defendant moved to withdraw his plea as providing an inadequate factual basis insofar as his allocution did not establish that he intended to use his folding knife as a weapon. *Id.* at 136–37, 799 *A.*2d 679. Notwithstanding *Riley* and *Brown,* the panel in *Clark* affirmed the trial judge's denial of the motion, because it concluded that "armed" for purposes of the robbery statute is different than "armed" for purposes of the burglary statute:

The obvious purpose of the Legislature in enacting the armed burglary provisions of *N.J.S.A.* 2C:18–2, *i.e.*, "armed with … a deadly weapon," as a crime of higher degree than simple burglary was to deter the commission of burglaries while so armed in order to protect potential victims from greater risk of injury when an implement that could be used as a deadly weapon is involved. Viewed in that light, the statute manifestly establishes as an element the mere possession of such an implement during a burglary. On that basis, the holdings of *Brown* and *Riley* are distinguishable. *We held in both Brown and Riley that the mere presence of a knife on the defendant's person, which was not used as a weapon, could not elevate a robbery from second degree to first degree because the purpose of the robbery grading distinction was to establish a difference where the weapon had been used to commit the crime.*

[*Id.* at 138–39, 799 A.2d 679 (citations omitted) (emphasis added).]

In my view, *Clark* was wide of the mark on several levels. First, it overlooked the fundamental principle of statutory construction that teaches us that where the Legislature uses the same language more than once in a statute, the same meaning will be ascribed to each usage unless the Legislature has specifically indicated otherwise. *See Oldfield v. N.J. Realty Co.*, 1 *N.J.* 63, 69, 61 *A.*2d 767 (1948) ("[T]he general rule is that where a word or phrase occurs more than once in a statute, it should have the same meaning throughout, unless there is a clear indication to the contrary…."). There is simply nothing to suggest that the Legislature's use of the term "armed with a deadly weapon" was intended to mean different things in different parts of the Code of Criminal Justice.

More importantly, *Clark* misconceived the holdings of *Riley* and *Brown*, which do not stand for the proposition that the "armed" component of armed robbery requires more than immediate access to a deadly weapon. Indeed, the issue in *Riley* and *Brown* was not whether the mere presence of a deadly weapon will satisfy the "armed" element of armed robbery; the issue was whether an object that is not per se a deadly weapon satisfies the "deadly weapon" component when it is neither used nor intended to be used as a deadly weapon. Under *Riley* and *Brown*, proof of actual or intended use is required when the alleged weapon is not a firearm.

The difference in outcome between *Merritt* (where the defendant stole firearms during a burglary and had no intention of using them as weapons but was convicted of armed burglary) and *Riley* and *Brown* (where the defendants carried knives during a robbery with no intention of using them as weapons, and were held not to be subject to conviction for first-degree armed robbery) is not that *Merritt* involved burglary and *Riley* and *Brown*, robberies. The critical difference is that *Merritt* involved firearms, whereas *Riley* involved an ordinary folding knife and *Brown*, a kitchen knife, implements that boy scouts, teachers, chefs, and ministers carry for entirely benign and legitimate purposes. As the *Riley* court explained:

> [I]n *State v. Merritt*, . . . relied on by the trial judge in denying defendant's motion to acquit him of first-degree robbery, we held that a defendant who stole firearms during the course of a residential burglary could be found guilty of armed burglary simply by reason of having those firearms in his possession during the course of committing the burglary. We reasoned that mere possession of those firearms met the statutory element of *N.J.S.A.* 2C:18–2b(2) of being armed with a deadly weapon because they were accessible for use by defendant while committing the crime whether or not he actually used or intended to use them. We fully concur in that reasoning but nevertheless think it clear that this case is different. Firearms are *per se* deadly weapons. Here, the implement with which defendant may be regarded to have been armed can be deemed to have been a deadly weapon—the other half of the "armed with a deadly weapon" formulation—only if the implement was, in fact, a deadly weapon. And this implement—the pocketknife—can only be found to have been a deadly weapon if it was used or intended to be used as such.

> [306 *N.J.Super.* at 149–50, 703 *A.2d* 347.]

*Merritt, Riley,* and *Brown* are seamlessly congruent approaches to the armed-with-a-deadly-weapon language in the robbery and burglary statutes. They stand for the proposition that, where the potential weapon is not a firearm, a defendant cannot be considered to have been "armed with a deadly weapon" unless he had immediate access to the item *and* an intent to use it in a way that is "capable of producing death or serious bodily injury." *N.J.S.A.* 2C:11–1(c) (defining deadly weapon). To the extent that Clark suggests otherwise, it continues to confuse our jurisprudence and should be disapproved. It is for that reason that I have penned this separate opinion.

Justice RIVERA–SOTO joins in this opinion.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.