**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0749-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LUIS FLORES, a/k/a EDWIN
RIVERA,

    Defendant-Appellant.

_____

        Submitted January 17, 2018 — Decided July 20, 2018

        Before Judges Carroll and Leone.

        On appeal from Superior Court of New Jersey,
        Law Division, Somerset County, Indictment No.
        15-04-0223.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Michele E. Friedman, Assistant
        Deputy Public Defender, of counsel and on the
        briefs).

        Michael H. Robertson, Somerset County
        Prosecutor, attorney for respondent (Paul H.
        Heinzel, Assistant Prosecutor, of counsel and
        on the brief).

PER CURIAM

Defendant Luis Flores appeals from his September 20, 2016 judgment of conviction. We affirm his convictions for robbery and possession of a weapon for an unlawful purpose, but remand to merge the latter into the former for sentencing purposes.

I.

The testimony at trial included the following. On April 1, 2015, the owner of a grocery store in Bound Brook saw on the surveillance monitor that defendant was taking items from the shelves and stuffing them inside his clothing. The owner approached defendant and told him to unzip his jacket. Defendant unzipped his outer jacket and said he did not have anything. The owner saw defendant was wearing a jacket underneath his outer jacket and told him to unzip his inner jacket.

When defendant partially unzipped his inner jacket, several detergent boxes fell to the floor, and it appeared he had other items near his waist. The owner told defendant to pull its zipper all the way down, but defendant refused. The owner stood three feet in front of defendant, blocked his exit, and told him to return the items.

Defendant pulled out a knife. The open folding knife had a two-and-a-half inch blade and was five inches long. The owner testified he was "very afraid" and in "fear for my life."

The owner pulled out his cellphone to call the police. Defendant stepped forward, and stuck out his hand with the knife.[1] He put the knife close to the owner's body, and grabbed his cellphone. The owner, fearing defendant might hurt or kill him, retreated and allowed defendant to leave the store.

As defendant left, he dropped cash inside and outside the store. He started picking up the cash, and handed the owner his cellphone. Defendant tried to re-enter the store to retrieve cash. The owner pushed him out and called for help. A neighbor came and together they pushed defendant to the ground and held him and his hand holding the knife. An officer arrived, grabbed the knife from defendant's hand, and arrested him. The items defendant took or tried to take from the store were worth over $150.

In his statement to police, defendant admitted he put items inside his jacket to steal them, and took out "a little" knife "[f]or [the owner] to see it and get scared." When asked if the owner got scared, defendant responded "Well, yes. Obviously."

Defendant was convicted of first-degree robbery by putting the owner in fear of immediate bodily injury while armed with, using, or threatening the immediate use of a deadly weapon,

---

[1] At trial, the owner demonstrated what defendant had done, and the trial court described that defendant "lunged toward the victim" pointing the knife at him.

A-0749-16T1

N.J.S.A. 2C:15-1, and third-degree possessing a weapon for unlawful purposes, N.J.S.A. 2C:39-4(d).

Defendant appeals, raising the following points:

> POINT I — ERRONEOUS JURY INSTRUCTIONS DEPRIVED FLORES OF HIS RIGHT TO A FAIR TRIAL. (Partially Raised Below).
>
> > A. The Court Directed the Jury's Verdict With Respect to an Essential Element of the Robbery Charge.
> >
> > B. During its Preliminary Instructions, the Court Erroneously Charged the Jury on Reasonable Doubt.
> >
> > C. The Cumulative Effect of the Instructional Errors Warrants Reversal.
>
> POINT II — THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN ADVISING THE JURY TWICE THAT FLORES WOULD ONLY DECIDE WHETHER TO TESTIFY IN HIS DEFENSE AFTER SITTING AND LISTENING TO THE ENTIRETY OF THE PROSECUTION'S CASE. (Not Raised Below).
>
> POINT III — THE JURY'S UNFETTERED ACCESS TO FLORES'S TRANSLATED STATEMENT DEPRIVED HIM OF DUE PROCESS AND A FAIR TRIAL. (Not Raised Below).

## II.

Defendant first appeals the denial of his objection to a sentence in the final jury charge. The trial court gave the model jury instructions on robbery, telling the jury it had to find that defendant "threatened [the owner] with or purposely put him[] in

fear of immediate bodily injury," and that he was alleged to have "threatened the immediate use of a deadly weapon." See Model Jury Charge (Criminal), "Robbery In The First Degree (N.J.S.A. 2C:15-1)" (rev. Sept. 10, 2012). The court then told the jury:

> you must understand what's meant by deadly weapon. That's fairly easy. A deadly weapon is anything which in the manner it is used or intended to be used is known to be capable of producing death or — or serious bodily injury. And generally speaking a knife is known to be capable of producing death or serious bodily injury.
>
> Now, and that has to be accompanied by the manner in which it is used would lead the victim to believe it to be capable of producing death or serious bodily injury.

After the court's charge, defense counsel objected that the trial court added the "generally speaking" sentence. The court responded: "Well, I don't think anybody who's lived to adulthood would dispute that a knife is capable of producing death or serious bodily injury."

We do not approve of the trial court's divergence from the model instructions by adding the unnecessary "generally speaking" sentence. However, defendant was not prejudiced. First, the evidence showed that the knife, "in the manner it [wa]s used or [wa]s intended to be used, [wa]s known to be capable of producing death or serious bodily injury," and thus met the definition of a "deadly weapon" in N.J.S.A. 2C:11-1(c). Second, the court told

5

the jury it could not convict unless it found that defendant used the knife in a manner that was capable of producing death or serious bodily injury, and that the victim believed it capable of producing death or serious bodily injury.

The evidence showed the manner the knife was used was both known to be, and would lead the victim reasonably to believe it was, capable of producing death or serious bodily injury. When the owner confronted defendant for stealing, defendant pulled out an open folding knife, pointed the knife at the owner, and lunged at him with the knife. The knife had a two-and-one-half-inch blade. The owner testified he feared defendant was going to kill him, and defendant admitted he intended to and did scare the owner.

Moreover, the trial court required the jury to find that "the manner in which it is used would lead the victim to believe it to be capable of producing death or serious bodily injury." Under the statute and the model jury instructions, that is part of an alternative way of finding that a device is a deadly weapon. The statute and model instruction define a deadly weapon as

> <u>any</u> firearm or other weapon, <u>device</u>, instrument, material or substance, whether animate or inanimate, <u>which in the manner it is used or is intended to be used</u>, (1) <u>is known to be capable of producing death or serious bodily injury</u> <u>or</u> (2) which in the manner it is fashioned <u>would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury</u>[.]

> [N.J.S.A. 2C:11-1(c) (emphasis and numbers
> added); accord Model Jury Charge (Criminal),
> "Robbery In The First Degree".]

This second alternative covers the use of objects "fashioned by a creative robber into something that generates a reasonable belief that it is or conceals a lethal weapon," such as pointing "a finger in a pocket." State v. Williams, 218 N.J. 576, 588 (2014). However, the trial court did not treat it as an alternative or mention "fashioned." Instead, the court told the jury it could not convict defendant of first-degree robbery unless it found both that defendant had a knife and that the manner in which it was used would lead the victim to believe it to be capable of producing death or serious bodily injury, which imposed on the State a burden it did not have to carry under the "known to be" alternative. Again, we do not approve of the court's variance from the model charge. Nonetheless, the court's additional requirement offset its earlier "generally speaking" sentence.

Moreover, the trial court properly instructed the jury that "to find the defendant was armed with a deadly weapon, the State must prove that he . . . had the purpose to use it in a way that is capable of producing death or serious bodily injury." See Model Jury Charge (Criminal), "Robbery In The First Degree." Thus, the court told the jury it could not convict defendant unless both

he had the purpose to use the knife in a way that was capable of producing death or serious bodily injury, and that he used it in a manner that led the victim to believe it was capable of producing death or serious bodily injury.

Under the definition of deadly weapon, the manner in which a knife is used or intended to be used is crucial. "[I]f the weapon is not a firearm, but an object with legitimate uses, for example a paperweight or a pair of scissors, its use or intended use will determine whether it meets the deadly weapon standard." State v. Rolon, 199 N.J. 575, 583 (2009). "Because the [folding] knife was not per se a deadly weapon, the jury had to assess whether defendant used it or intended to use it as such." Id. at 586. "If the jury believed defendant used or intended to use the knife against the victim, the definition of deadly weapon was satisfied." Ibid.

Here, the evidence showed, and the jury necessarily found, that defendant intended to use the open folding knife against the owner by pointing it and lunging with it to put the owner in fear of death or serious bodily injury. Whether a "knife[] is regarded as a deadly weapon is resolved by a 'contextual test.' 'If it is used as a weapon, it is a [deadly] weapon.'" State v. Burford, 163 N.J. 16, 20 (2000) (quoting Cannel, New Jersey Criminal Code Annotated, comment 4 on N.J.S.A. 2C:39-5 (1999)).

In any event, we have no doubt that if the trial court had properly read the model charge without the "generally speaking" sentence, the jury would have found that defendant used the knife in a manner "known to be capable of producing death or serious bodily injury."  "Knives are commonly used in causing deaths and serious bodily injuries."  State v. Munroe, 210 N.J. 429, 446 (2012).  A folding "knife, popularly known as a pocketknife, penknife, or jackknife," may "be a lethal weapon." State v. Green, 62 N.J. 547, 560 (1973).[2]  By pointing the knife and lunging at a victim, defendant used it in a manner known to be capable of producing death or serious bodily injury.  The jury found that was what defendant intended to do, and what the owner believed he was doing.  Under these circumstances, it is clear beyond a reasonable doubt that any rational juror would have found the folding knife was a deadly weapon.  See United States v. Smith, 561 F.3d 934, 937-41 (9th Cir. 2009) (finding harmless that the court instructed the jury to find if the defendant used a knife rather than instructing it to determine if he used a dangerous weapon).

---

[2] See, e.g., State v. Walker, 694 S.E.2d 484, 493 (N.C. Ct. App. 2010) ("A pocketknife is also unquestionably capable of causing serious bodily injury or death," including one "having a blade two and a half inches long"); Commonwealth v. Duxbury, 674 A.2d 1116, 1118 n.4 (Pa. Super. Ct. 1996) ("There is no doubt that [a penknife with a three-inch blade] is capable of producing death or serious bodily injury").

A-0749-16T1

This was not a situation where a defendant merely had a folding knife in his pocket throughout the robbery, and "[t]here was no evidence that defendant used or intended to use his pocket knife during the course of the robbery. Nor did the victim himself have knowledge of defendant's possession of the knife." State v. Riley, 306 N.J. Super. 141, 146 (App. Div. 1997). In those circumstances, we have held the unseen, unused knife was not a deadly weapon. Id. at 149; State v. Brown, 325 N.J. Super. 447, 454 (App. Div. 1999); see Rolon, 199 N.J. at 586 (ruling that if the defendant "never used or intended to use the closed folding knife that simply dropped out of her pocket onto the floor during the scuffle, the definition of deadly weapon was not met"). By contrast, the circumstances here showed defendant was using the knife as a deadly weapon.

Like our Supreme Court, we "remind our trial courts that, insofar as consistent with and modified to meet the facts adduced at trial, model jury charges should be followed and read in their entirety to the jury." State v. R.B., 183 N.J. 308, 325 (2005). Nonetheless, to the extent [the trial court's divergences from the model charge] were error, under the . . . facts of this case, we do not find the charge so erroneous as to require reversal." Estate of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 596-97 (2015). Here, the trial court's divergences were not

prejudicial and were not "clearly capable of producing an unjust result." R. 2:10-2.

We recognize that "'"[a]ppropriate and proper charges are essential for a fair trial."'" State v. Baum, 224 N.J. 147, 158-59 (2016) (alteration in original) (citations omitted). "An erroneous jury charge 'when the subject matter is fundamental and essential or is substantially material'" is presumed prejudicial and is a "'poor candidate[] for rehabilitation under the harmless error [standard].'" State v. Maloney, 216 N.J. 91, 104-05 (2013) (citations omitted). Nonetheless, "[u]nder that standard, there must 'be "some degree of possibility that [an error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [the error] led the jury to a verdict it otherwise might not have reached."'" Baum, 224 N.J. at 159 (citations omitted). We do not see such a real possibility here.

Defendant does not claim that there was such a possibility. Rather, he claims reversal is required because the "generally speaking" sentence directed a verdict on an essential element of first-degree robbery, namely that defendant was "armed with, or use[d] or threaten[ed] the immediate use of a deadly weapon." N.J.S.A. 2C:15-1(b).

However, the trial court did not direct a verdict. The court uttered the sentence in the course of instructing the jurors "in order for you to determine whether the defendant was in possession of or threatened the immediate use of a deadly weapon." The court made clear to the jurors: "In order for you . . . to find defendant was armed with a deadly weapon, the State must prove . . . that he possessed it and had immediate access to the weapon but also had the purpose to use it in a way that is capable of producing death or serious bodily injury." The court instructed the jurors: "If you find that the State . . . has not proven beyond a reasonable doubt that the defendant was armed with or used or purposely threatened the immediate use of a deadly weapon at the time of the commission of the robbery, then you must find the defendant guilty of simple [second-degree] robbery."

The trial court merely stated that "generally speaking a knife is known to be capable of producing death or serious bodily injury." "Generally speaking" means "in general." The court left for the jury the specific determinations whether defendant "had the purpose to use it in a way that is capable of producing death or serious bodily injury" and whether "the manner in which it was used would lead the victim to believe it to be capable of producing death or serious bodily injury."

This case bears no resemblance to the cases defendant cites, where judges directed a verdict. In State v. Collier, 90 N.J. 117 (1982), the judge "direct[ed] the jury to return a verdict of guilty on the charge of contributing to the delinquency of a minor." Id. at 121. State v. Ragland, 105 N.J. 189 (1986), addressed the "unique" situation where a defendant is tried first for unlawful possession of a weapon and then in a bifurcated proceeding for possession of a weapon by a convicted felon, where the judge told the jury it had already found that the defendant "was in possession of a sawed-off shotgun," even though the jury was required "to consider anew the evidence previously admitted [and] to disregard completely its prior verdict." Id. at 192-95.

In State v. Grenci, 197 N.J. 604 (2009), the court in a burglary prosecution instructed the jury that "it's true with regard to [two defendants] that they entered without license or privilege to be" in the victim's apartment. Id. at 621. "That instruction specifically advised the jury that, in the cases of [the two defendants], both of whom were being tried in absentia, one element of burglary had been proven[.]" Id. at 622. "The court reinforced that mistake by explaining - without any mention of [the two defendants] - that if '[the third defendant] entered the apartment of [the victim] at [the victim's] implied or

expressed invitation,'" then "'[the third defendant] could not be convicted of the crime of burglary.'"  Id. at 621-22.

By contrast, the "generally speaking" sentence did not mention defendant, did not advise the jury it was "true" defendant committed any element, and did not reinforce any such comment. Rather, as set forth above, the trial court's other instructions offset the "generally speaking" comment, and made plain that the jury had to decide this element.  "Based on the totality of the instructions, we are satisfied that the judge did not direct a verdict on any element of the charges against defendant.  Thus, a reversal is not warranted."  See State v. Wesner, 372 N.J. Super. 489, 495 (App. Div. 2004).[3]

On appeal, defendant complains for the first time about the trial court's comment regarding "what's meant by deadly weapon. That's fairly easy."  That comment, while unnecessary, was immediately followed by the correct definition: "A deadly weapon is anything which in the manner it is used or intended to be used is known to be capable of producing death . . . or serious bodily

---

[3] Indeed, even a refusal to submit an element to the jury is subject to harmless-error analysis and can be harmless.  Neder v. United States, 527 U.S. 1, 4, 7-20 (1999); State v. Purnell, 161 N.J. 44, 63-64 (1999) (following Neder); Smith, 561 F.3d at 938 (following Neder); see also State v. Camacho, 218 N.J. 533, 550-52 (2014) (citing Neder and holding that even instructional errors "of constitutional dimension" are subject to harmless-error analysis).

injury." See N.J.S.A. 2C:11-1(c). Defendant has not shown the comment was plain error "clearly capable of producing an unjust result." R. 2:10-2.

## III.

Defendant next challenges a portion of the trial court's preliminary instructions to which he did not object at trial. "[T]he failure to object to a jury instruction requires review under the plain error standard." State v. Wakefield, 190 N.J. 397, 473 (2007). Defendant must demonstrate "'"legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."'" Ibid. (citations omitted); see State v. Chew, 150 N.J. 30, 82 (1997). To show such an effect, defendant must prove the error was "clearly capable of producing an unjust result[.]" R. 2:10-2. We must hew to that standard of review.

On appeal, defendant complains for the first time about the portion of the trial court's preliminary instructions after the jury was sworn, addressing direct and circumstantial evidence:

> A conviction may be based on direct evidence alone, circumstantial evidence alone, or a combination of circumstantial and direct evidence, provided, of course, that it convinces you of a defendant's guilt beyond a

15

reasonable doubt. Conversely, if direct or circumstantial evidence gives rise to a reasonable doubt in your minds as to the defendant's guilt, then the defendant must be found guilty. Therefore, both circumstantial and direct evidence should be scrutinize [sic] and evaluated carefully by you.

Defendant now notes the "conversely" sentence should have the word "not" before "guilty." See Model Jury Charge (Criminal), "Instructions After Jury Is Sworn" (rev. Oct. 15, 2012).[4] The absence of "not" went unnoticed by the trial court, the prosecutor, or defendant's counsel, and thus may not have been noticed by the jury. "Defendant's failure to 'interpose a timely objection constitutes strong evidence that the error belatedly raised here was actually of no moment.'" State v. Tierney, 356 N.J. Super. 468, 481 (App. Div. 2003) (citation omitted); see State v. Ingram, 196 N.J. 23, 42 (2008). Because defendant did not object to the instruction, "there is a presumption that the charge . . . was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012).

Indeed, the structure of the paragraph and the "conversely" sentence made its meaning clear. After the trial court's first sentence said "A conviction may be based" on direct or circumstantial evidence that "convinces you of defendant's guilt

---

[4] The court reporter has certified the transcript was accurate. No audio recording is available.

A-0749-16T1

beyond a reasonable doubt," the court followed with "Conversely, if direct or circumstantial evidence gives rise to a reasonable doubt in your minds as to the defendant's guilt," leading to the natural conclusion that the jury would have to find defendant not guilty. "Conversely" means "introducing a statement or idea which reverses one that has just been made or referred to." New Oxford American Dictionary 381 (3d ed. 2010). That was how the "conversely" sentence was intended and apparently how it was understood.

In addition, our Supreme Court has "emphasized that '[t]he alleged error is viewed in the totality of the entire charge, not in isolation[.]'" Wakefield, 190 N.J. at 473 (citation omitted). Later in its opening instructions, the trial court gave a full reasonable-doubt instruction, correctly telling the jury that: defendant "is presumed to be innocent"; "unless each and every essential element of an offense charged is proved beyond a reasonable doubt he must be found not guilty of that charge"; "[a] reasonable doubt can arise from the evidence itself or from a lack of evidence"; and if "you are not firmly convinced of Mr. Flores's guilt, you must give him the benefit of the doubt and find him not guilty."

Moreover, the trial court's opening instructions told the jurors to keep an open mind until they heard the final jury

instructions. In those final instructions, the court again gave a full reasonable-doubt instruction, repeating the same correct instructions that if the jury found a reasonable doubt they must find defendant "not guilty." The court also correctly instructed the jury on direct and circumstantial evidence, reciting the equivalent paragraph and giving the jury the correct law:

> A verdict of guilty may be based on direct evidence alone, circumstantial evidence alone or a combination of the two, provided, of course, that it convinces you of the defendant's guilt beyond a reasonable doubt. The reverse is also true. If by reason of direct evidence, circumstantial evidence, a combination of the two, or a lack of evidence it raises in your mind a reasonable doubt about the defendant's guilt, you must give him the benefit of the doubt and find him not guilty.

Thus, the court made clear that if the jurors found a reasonable doubt based on direct evidence, circumstantial evidence, or the lack of evidence, they had to find defendant "not guilty."

Further, "'any finding of plain error depends on an evaluation of the overall strength of the State's case.'" Wakefield, 190 N.J. at 473 (citation omitted). Here, the State presented testimony from the owner who witnessed and was the victim of the charged robbery, the responding officer who saw the knife still in defendant's hand and the stolen goods still in his clothes, the officers who recovered the knife and goods, the detective to whom

defendant confessed, his confession, the knife, and other witnesses and evidence. The State's case was strong and essentially uncontradicted.

Defendant cannot show plain error in light of the strength of the State's case, his non-objection to the "conversely" sentence in the preliminary direct-and-circumstantial-evidence instruction, the trial court's clear, correct, and repeated reasonable-doubt instructions, and its correct direct-and-circumstantial-evidence instruction in the final charge before the jury deliberated. He has not shown prejudice "'sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" Wakefield, 187 N.J. at 473-75 (finding no plain error from the omission of two sentences from the reasonable doubt instruction).

Rather, the lack of prejudice is shown by "'"the isolated nature of the transgression and the fact that a correct definition of the law on the same charge is found elsewhere in the court's instructions."'" Baum, 224 N.J. at 160 (citations omitted); see State v. Docaj, 407 N.J. Super. 352, 370-71 (App. Div. 2009). In State v. Burns, 192 N.J. 312 (2007), our Supreme Court found no plain error where the judge omitted the word "not" from its instruction about the defendant's relative who refused to answer

questions about the defendant at trial: "[T]he mere fact that Mr. Young didn't answer the questions is [not] for your consideration as to the existence of those facts."  Id. at 343.  The Court emphasized that the judge elsewhere correctly informed the jury "it should not draw any inference about facts contained in the questions that the witness refused to answer."  Ibid.  The Court also stressed "[t]he failure of either defendant or the State to object to the inappropriate comment in the jury charge."  Ibid. "[V]iewing the instructions as a whole, and in light of the overwhelming evidence of defendant's guilt, the brief inadvertent error in the instructions does not require a new trial."  Ibid. The same is true here.

Defendant also argues the cumulative effect of the instructional errors warrants reversal.  However, the omission of one word in the "conversely" sentence in the preliminary direct- and-circumstantial evidence instruction had no effect because it went unnoticed and was corrected by the context and by the trial court's repeated, correct instructions.  Moreover, the "generally speaking" sentence in the final charge regarding first-degree robbery was offset by the court's other instructions requiring the jury essentially to make the required finding.  Neither sentence resulted in prejudice.  The two sentences also had no cumulative effect as they had nothing to do with one another and were

separated by the entire trial. "We are fully satisfied that, both individually and collectively, any errors committed at trial were not clearly capable of" producing an unjust result. See State v. Feaster, 156 N.J. 1, 85 (1998).

IV.

Defendant next challenges, for the first time, the trial court's comments to the jury about the anticipated events before the jury began deliberations. Defendant fails to show plain error.

At the conclusion of the Thursday trial day, the trial court gave the jury a "snapshot" of upcoming events "[j]ust for your planning purposes":

> I am advised that the State has, perhaps, one more witness to put before you. Okay. At that point the State will rest. There will then be some legal issues I anticipate that I will have to discuss with counsel. Before I ask [defense counsel] and Mr. Flores as to whether they will present evidence for your consideration and ask if Mr. Flores will testify. I'm not even allowed to ask that until the State has rested because yet again I tell you, the burden of proof is on the State. It never shifts.

Based on those events, the trial court told the jurors "I expect that we may have this matter concluded on Monday but for jury charge and summations," but its "expectation realistically" was that the jurors would "have this case for your deliberations Tuesday morning."

21

On Monday, after the State rested, the trial court again advised the jury of upcoming events:

> I think I indicated last Thursday that I thought the State's case might wrap up today and indeed it has. At this point I have to have a discussion with [defense counsel] to determine or to ask him to advise me as to whether he intends to put evidence before you for your consideration. There are other legal matters that I need to discuss with the attorneys before we proceed with that. And until the State rests I'm not even permitted, nor is it appropriate for me, to make inquiry of Mr. Flores as to whether he's going to testify, because as I remind you, and you have heard me say a number of times, he doesn't have to present evidence. He doesn't have to testify. Okay. But there is a procedural colloquy — excuse me — not a procedural, a subsequent colloquy discussion we have to have in that regard. So, that will probably take us to three o'clock. . . . So I'm inclined to excuse you now[.]

The trial court then excused the jury for the day. With the jury absent, the court heard defendant's motion for a directed verdict, held the colloquy with defense counsel and defendant about whether defendant wanted to testify, and was told he would not testify and the defense would rest.

It is clear that in the two quoted paragraphs the trial court was providing the jurors with a sequence of events to predict when they would start deliberating and to explain why they were being dismissed early. The court referenced the colloquy about whether defendant wished to testify because it was an event that would

22

affect the timing of trial to an uncertain extent because the court could not know whether defendant would testify until the State rested.

The trial court's desire to advise the jurors of their anticipated schedule was understandable. However, it was unnecessary to describe for the jury events that properly occur out of the jury's presence, such as the colloquy. The court should have simply informed the jurors of their own schedule without describing the colloquy, and needlessly triggering the need for the cautionary instructions the court gave.

Nonetheless, defendant was not prejudiced. The trial court gave cautionary instructions that defendant "doesn't have to present evidence. He doesn't have to testify." and "the burden of proof is on the State. It never shifts." Moreover, when the jury returned on Tuesday, it learned defendant was not going to testify when defense counsel agreed the defense had no "evidence to present for the jury's consideration. The defense would rest." Further, the court properly charged the jury:

> as you know, Mr. Flores elected not to testify at this trial. As I have told you before, that is his constitutional right to remain silent. You must not consider for any purpose in any manner at any time in arriving at your verdict the fact that Mr. Flores did not testify. That fact should not enter into your deliberations or discussions in any manner at any time.

Defendant does not claim the trial court's scheduling comments prejudiced him by referencing his right not to testify. Instead, he asserts that the comments suggested he sought to tailor his testimony because the court said he would not decide until after the State rested.

Defendant's argument is baseless. First, the trial court's statements "I'm not even allowed to ask that until the State has rested" and "until the State rests I'm not even permitted, nor is it appropriate for me, to make inquiry" implied the timing of the inquiry was dictated by legal requirements, not by defendant. We have ruled a "[d]efendant is not obligated to give the State advance notice of her intention to testify or not testify. . . . until the State has rested," State v. Alston, 212 N.J. Super. 644, 648 (App. Div. 1986), and that a court may not require such advance notice, In re Mandell, 250 N.J. Super. 125, 131 (App. Div. 1991).

Second, defendant did not testify or present witnesses. As a result, there was no testimony the jury might view as tailored. Thus, this case bears no relation to the cases defendant cites, where the defendant testified and "the prosecutor suggested during summation [or cross-examination] that defendant tailored his testimony to meet the facts testified to by other witnesses." State v. Daniels, 182 N.J. 80, 85, 98-99 (2004); see State v.

Feal, 194 N.J. 293, 298 (2008).  Therefore, "we do not find that plain error occurred."  See Feal, 194 N.J. at 313.

V.

Defendant next complains for the first time that the trial court allowed the jury to take into the deliberations room the translated transcript of his statement to police.  He fails to show plain error.

After defendant's arrest, he gave a statement in Spanish to a detective also speaking in Spanish.  The statement was video-recorded, and a translator viewed the DVD and prepared a written transcript in English.  Defense counsel said he had "No objection" when the transcript was admitted as an exhibit.

The detective read the transcript to the jury.  Without objection, the trial court gave copies of the transcript to the jurors to read along, and stated: "since the statement is in Spanish, the transcript itself has been entered into evidence.  So you'll have the original copy with you in the jury deliberation room when you begin that portion of your responsibilities."

Just before summations, defense counsel and the prosecutor stipulated to changes in the transcript, providing English translations of the Spanish phrases previously marked "inaudible."  Defense counsel read the stipulation to the jury, including: "The State and the defendant do hereby agree and stipulate that the

transcript of the statement of Luis Flores translated into English should reflect the following changes.  The statement transcript has been marked into evidence.  You'll get a copy of it."

Generally, "[t]he jury may take into the jury room the exhibits received in evidence[.]"  R. 1:8-8(a).  "The Rule does not distinguish between testimonial evidence, such as statements or depositions, and non-testimonial evidence."  State v. A.R., 213 N.J. 542, 560 (2013).  Under the rule, it was perfectly appropriate to allow the jury to consider the transcript during deliberations because it had been admitted as an exhibit.  See State v. DeBellis, 174 N.J. Super. 195, 199 (App. Div. 1980).

By contrast, "video-recorded statements have been considered a different type of exhibit."  A.R., 213 N.J. at 560.  Courts have created "an exception to Rule 1:8-8(a)" under which "a trial court should not permit a jury to have unrestricted access during deliberations to the videotaped pretrial statements of witnesses."  State v. Weston, 222 N.J. 277, 289 (2015).

The cases creating this exception have emphasized the differences between a video recording and a transcript. "'[V]ideotape evidence is unique' because it allows jurors to observe the witness's demeanor while hearing the testimony."  State v. Burr, 195 N.J. 119, 133 (2008) (quoting State v. Michaels, 264 N.J. Super. 579, 643 (App. Div. 1993), aff'd on other grounds, 136

N.J. 299 (1994)). "'[V]ideotaped testimony provides more than conventional, transcribed testimony'" because the jury views the image of the witness and hears "'all of the animation, passion, or sympathy originally conveyed'" in the witness's words. A.R., 213 N.J. at 553 (quoting Michaels, 264 N.J. Super. at 644). Seeing the image "magnifies the effect of" hearing "every inflection, every hesitation, and every equivocation in the voice of the witness." Id. at 546. "The video recording is the functional equivalent of a live witness and can be particularly persuasive." Id. at 560 (citation omitted). Because "a video replay . . . presents much more information than does a transcript reading," defendant is mistaken in claiming that a transcript is the functional equivalent of a videotaped statement. Burr, 195 N.J. at 133 (quoting Michaels, 264 N.J. Super. at 644).

Defendant notes the precaution that, "because a jury's review of a videotaped witness statement or testimony raises concerns that a particular segment will be overemphasized or viewed out of context, any replay of such a statement or testimony must be conducted in open court, under the careful supervision of the trial judge." Weston, 222 N.J. at 292-93. However, this precaution arose from the Court's principal fear that jurors would "place undue emphasis" on video recordings because of "the unique features of . . . video-recorded evidence." A.R., 213 N.J. at

27

546, 559-61; see Burr, 195 N.J. at 131-34 (citing precautions "to reduce the risk that the jury would unduly emphasize the videotaped testimony" "over other testimony presented at trial"); see also Michaels, 264 N.J. Super. at 643-45 (agreeing that replaying witness's videotaped testimony "'unduly emphasized their testimony'"). In any event, in these and other cases the Court stated it was sufficient if "the entire testimony requested should be played back — including direct and cross examination — so that evidence may be considered in its proper context." E.g., State v. Miller, 205 N.J. 109, 122 (2011). The trial court provided the jury with the entire transcript, and thus the entire context.

Similarly, it was the unique nature of video recordings that caused the courts to require that "a replay of a videotaped statement during deliberations should only be conducted upon the jury's request, and after a determination that the jury's concerns cannot be addressed with a readback of testimony." Weston, 222 N.J. at 293 (citing A.R., 213 N.J. at 560-61; Burr, 195 N.J. at 133-35; Michaels, 264 N.J. Super. at 644-45).

Defendant now complains that the transcript was translated by a legal secretary in the prosecutor's office. However, she was fluent in Spanish, spoke the same Puerto Rican dialect as defendant, and had translated over a hundred statements. Both she and the Spanish-speaking detective certified to the accuracy of

the transcript. Moreover, defendant points to no inaccuracy in the transcript. Thus, defendant has not shown plain error. See Weston, 222 N.J. at 300.

In any event, defense counsel expressly stated he had no objection to the admission of the transcript, stipulated to changes to replace inaudible words, and stipulated the jury would receive a copy. In his closing argument, counsel reiterated that "[t]he statement of Mr. Flores was entered into evidence and you'll have it with you." Counsel argued defendant's statement showed that he only intended shoplifting, and that he only took out the knife to defend himself and escape. Accordingly, defendant's claim is also barred by "the invited-error doctrine. Under that settled principle of law, trial errors that '"were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal[.]'"" A.R., 213 N.J. at 561-63 (citations omitted) (barring the defendant from complaining that the jury had unfettered access to a video-recorded statement during deliberations); see N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339-42 (2010) (barring the defendant from complaining documents were admitted when defense counsel said he had no objection).

# VII.

Finally, defendant raises a merger claim the State concedes is meritorious. On the robbery court, the trial court sentenced defendant to ten years in prison with 85% parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2. On the count charging the possession of a weapon for unlawful purposes, the court imposed a concurrent term of four years in prison.

As the parties agree, the possession for unlawful purposes count should have merged for sentencing purposes with the robbery count. The trial court instructed the jury: "the State contends that the defendant's unlawful purpose in possessing the knife was to put the victim in fear of immediate bodily injury." That concededly occurred during, and was an element of, the robbery. See N.J.S.A. 2C:15-1(a)(2). There was no evidence of, and the jury was instructed not to consider, any other unlawful purpose. "[W]hen the only unlawful purpose in possessing the [knife] is to use it to commit the substantive offense, merger is required." See State v. Tate, 216 N.J. 300, 308 (2013) (quoting State v. Diaz, 144 N.J. 628, 636 (1996)).

We reverse defendant's sentence for possession for an unlawful purpose and remand "for correction of the judgment of conviction to reflect that the conviction for possession of a weapon for an unlawful purpose merges into the [robbery]

conviction."  <u>See</u> <u>id.</u> at 313.  We affirm in all other respects.

We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0749-16T1